IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DILIAN CASTRO MEDINA,<br><br>    Plaintiff<br><br>v.<br><br>THE PROCTER & GAMBLE COMMERCIAL CO.; PROCTER & GAMBLE PHARMACEUTICAL CO.; X, Y, AND Z,<br><br>    Defendants. | CIVIL NO. 2004-2274 (PG)<br><br>FAMILY MEDICAL LEAVE ACT ("FMLA"); AMERICANS WITH DISABILITIES ACT ("ADA"); RETALIATION; AND OTHER EMPLOYMENT RELATED CLAIM |

**MOTION TO STRIKE PLAINTIFF'S
WITNESSES' FILES AND REPORTS**

TO THE HONORABLE COURT:

    Comes now defendant, The Procter & Gamble Commercial Company ("PG Commercial" or "defendant"), through its undersigned attorneys and very respectfully states as follows:

**I. INTRODUCTION**

    1.  On April 27, 2006, Dilian Castro Medina ("plaintiff") filed "Plaintiff's Motion and Memorandum of Law in Reply to Defendant's Motion for Summary Judgment" (hereinafter "Opposition") and "Plaintiff's Statement of Facts" (hereinafter "Plaintiff's Statement") (Docket 50 and 51).

    2.  In both motions, plaintiff submits she is a qualified individual with a disability under the Americans with Disabilities Act ("ADA"), and its local counterpart. To prove these allegations, plaintiff includes as evidence in the "Plaintiff's Statement of Facts" various medical files/reports;

to wit: (a) a reporting letter form from a Rheumatologist, Dr. Jorge Mundo; (b) her medical file with another physician, Dr. José Román, along with a typewritten note; (c) her medical file with a family physician, Dr. Raymond Tasch; and, last, (d) an expert witness report of a psychiatrist, Dr. José Villanueva.

3. Defendant moves to strike and exclude these files/reports from the record for: failure to comply with the requisites of Fed. R. Evid. 701 and 702; and Fed. R. Civ. P. Rule 26.

4. These exhibits in support of plaintiff's statement: (1) contain numerous fundamental flaws; (2) are outdated; and (3) are devoid of analysis and methodology. They lack probative value under Federal rules. Therefore, the documents defeat their purpose. They are conclusory, and do not support the claim that plaintiff is a qualified individual with a disability or has suffered damages.

## II. DISCUSSION

### A. Dr. Mundo's letter/report - Exhibit 1 of Docket 51

Plaintiff submits as evidence a letter from Dr Mundo's, an apparent medical and psychiatric assessment or report of plaintiff. This assessment stems from one (1) visit that dates **September 14, 2001**, nearly five (5) years ago. This report does not state any reference as to whether Dr. Mundo is a treating physician or if Dr. Mundo has treated her since September 2001.

Obviously, this report lacks any probative value and should be excluded from the record.

Neither plaintiff nor Dr. Mundo explain the reason the report was prepared or the purpose of the report, the methodology underlying it, the guidelines used in preparing it, much less whether the guidelines used (and not identified) are generally followed by the medical community. Further, Dr. Mundo's diagnosis does not contain any basis or foundation for rendering its vacant conclusions. It certainly does not make reference to data, information or any supporting exhibits analyzed or considered in reaching these determinations.

The report is devoid of any analytical foundation for the classifications, symptoms, and conclusions rendered. Thus, the report reeks fallaciousness. Dr. Mundo, a Rheumatoligst, renders conclusions and opinions of psychiatric realms, proper for a Psychiatrist or Psychotherapist. The report includes statements such as: "Diagnosis #8. Major Depression with Anxiety; sexual disturbance; poor response to relations; loss of concentration; ...compare to average population, quality of life is lost". See, page 2 and 3 of Exhibit 1 of Docket #51. Given these statements, defendant is compelled to question the basis for such a diagnosis and its prognosis.

Recently, the United States District Court for the District of Puerto expressed " ... it ... logically follows that for a

treating physician not to be bound by the expert witness requirements of Rule 26, the physician's testimony must be closely constrained to the facts of the treatment administered and discussed in his notes taken at the time of his examination." Gonzalez v. Exec. Airlines, 2006 U.S. Dist. Lexis 15263 (D.P.R. 2006) (The Court excluded a treating physicians letter addressed "To Whom It May Concern", finding it was not a part of the medical record of treatment of the plaintiff and instead appeared to have been composed for the purposes of the litigation, placing it outside the scope of testimony arising from the treatment of the plaintiff.)

The same rule should apply to Dr. Mundo's letter report.[1] Absent any pertinent information or qualifications regarding Dr. Mundo's conclusions and speculation, the report is insufficient and inadmissible as evidence in the present action, much less do Dr. Mundo's inferences prove plaintiff's disability and/or damages. Even if plaintiff were to submit the letter as an expert report, plaintiff has not complied with the mandates of the Fed. R. Civ. P. 26.

Last, Dr. Mundo's report offers no reasoning for his prognosis or his assessment on limitations. His assessment is merely unfounded conclusions that have absolutely no probative

---

[1] Similar to the stricken reports in González, supra, Dr. Mundo's report was written in a letter form, addressed "To Whom It May Concern," and evidently is not a proper part of the plaintiff's medical record.

value. As such, defendant respectfully requests Dr. Mundo's report be stricken from the record.

**B.    Dr. José Román's medical file - Exhibit 2 of Docket 51; and**
**C.    Dr. Raymond Tasch - Exhibit 3 of Docket 51[2]**

Plaintiff presents Dr. Román's and Dr. Tasch's respective medical files as evidence that plaintiff is a qualified individual with a disability. Plaintiff submits a type-written note dated March 5, 2005, along with Dr. Román's medical file which, for the most part, is illegible and comprises (presumably) many of the physician's hand-written notes.[3] Plaintiff also submits similar illegible hand-written notes from her family physician, Dr. Tasch.

However, the diagnosis or prognosis find no purpose in plaintiff's Statement as it can not and does not comply with the Supreme Court standard addressed in <u>Toyota Motor Manufacturing</u> v. <u>Williams</u>, 534 U.S. 184, 151 L. Ed. 2nd 615, 122 S. Ct. 681 (2002).

There, the Supreme Court addressed a disability claimant's ADA burden by establishing:

> It is insufficient for individuals attempting to prove disability status under this test [of actual disability] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the

---

[2] In the interest of brevity, the medical files will be discussed together as the same foundation to strike applies.
[3] Defendant reserves the right to further contest any portions that are illegible in the medical file.

> limitation [caused by their impairment] in terms of their own experience is substantial." Toyota Motor, 122 S. Ct. at 691-92, quoting Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 567, 144 L. Ed. 2d 518, 119 S. Ct. 2162 (1999).

The Toyota Motor Court emphasized the need to perform an individualized assessment of a person's physical impairment to determine whether that impairment substantially limits the major life activities of that particular person. It reasoned that a medical diagnosis alone is insufficient to qualify a person as disabled within the meaning of the ADA since symptoms vary in degree and extent from person to person. Id. at 692.

These medical files should be stricken from the record for the same reasons expressed in Toyota Motors. In sum, the physician's notes and diagnosis do not make plaintiff qualified with a disability, under the ADA. At most, the files prove a Fibromyalgia diagnosis insufficient to support a disability claim.

The rub plaintiff fails to grasp is that the medical files contain a mere diagnosis altogether insufficient to prove she has limitations on major life activities. Thus, the medical files are superfluous. Moreover, these notes certainly do not call upon any limitation to plaintiff's major life activities. In light of the above, defendant requests that the Court strike from the record the medical files (Exhibit 2 and 3 of Docket 51).

**D.  Dr. Villanueva's Expert Report - Exhibit 31 of Docket 51**

Plaintiff submits her expert, Dr. José Villanueva's, report as evidence of both disability and "work-related" damages due to the alleged discrimination. However, this report does not comply, even in the slightest, with the mandated provisions of a proper expert witness report. Dr. Villanueva's report does not contain a founded or reasoned opinion. It does not refer to, or contain, an analysis of the data considered. As such, plaintiff fails to comply with the requisites of Fed. R. Civ. P. 26(a)(2)(B).

Fed. R. Civ. P. 26(a)(2)(B) requires that an expert report contain: (A) A complete statement of all opinions to be expressed and its basis and reasons; (B) The data or other information considered by the witness in forming the opinions; (C) Any exhibits to be used as a summary of, or support for, the opinions; (D) The qualifications of the witness; among others.

Failure to provide an expert report in compliance with the Fed. R. Civ. P. 26(a)(2)(B)[4] justifies the Court in excluding the testimony of the expert witness in question under Fed. R. Civ. P. 37(c)(1). See, Peña-Crespo v. Puerto Rico, 408 F.3d 10, 13-14 (1st Cir. 2005) (First Circuit affirmed the district court's

---

[4] Rule 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any

decision to exclude plaintiff's psychiatric expert from testifying at trial because the expert did not explain the basis and reasons for his opinions and did not describe any exhibits he planned on using). Similarly, Dr. Villanueva's report is futile as it does not contain an analytical basis or the causative link to establish his opinion, much less a foundation for arriving at his conclusions.

Second, Dr. Villanueva's testimony is inadmissible as expert testimony under Fed. R. Evid. 702. Fed. R. Evid. 702 states:

> Rule 702. Testimony by Experts
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court established certain requisites for determining the admissibility of expert witnesses under Fed. R. Evid. 702. According to the Court, the Federal Rules of Evidence place limits on the admissibility of purportedly scientific evidence: "The primary focus of this obligation is Rule 702, which clearly contemplates some degree of

---

witness or information not so disclosed.

regulation of the subjects and theories about which an expert may testify." Daubert, 509 U.S. at 589. See, Cortes-Irizarry v. Corporación Insular, 111 F. 3d 184 (1st Cir. 1997)(If the proffered expert testimony fails to cross Daubert's threshold for admissibility, a district court may exclude that from consideration when passing upon a motion for summary judgment.)

To determine whether an expert witness is admissible, the Daubert Court calls to question: (1) whether it refers to "scientific knowledge", i.e. if it is based on "scientifically valid principles", and is reliable; and (2) whether it is relevant to the case in question. Daubert, 509 U.S. at 593-597. Essentially, the Court proposed the following analysis:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to **(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.** Daubert, 509 U.S. at 592-593 (*Emphasis Added.*) (*Footnotes omitted.*).

A review of Dr. Villanueva's report negates the Daubert analysis as there are voids where there should be analytical substance.[5]

---

[5] The Daubert Court illustrated several factors to examine the reliability of scientific evidence: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) consider the known or potential rate of error, in the case of a particular scientific technique; (4) Degree of acceptance within the

According to the Supreme Court, "[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability--of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594-595.[6]

Upon remand by the Supreme Court, the 9th Circuit elaborated the "reliability" and "relevance" requirements for determining admissibility of scientific evidence. Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995) ("Daubert II").

As to the "reliability" requirement the 9th Circuit stated:

> **If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on "scientifically valid principles." One means of showing this is by** proof that the research and analysis supporting the proffered conclusions have been subjected to normal **scientific scrutiny through peer review and publication.**
>
> ....
>
> Establishing that an expert's proffered testimony grows out of pre-litigation research or that the expert's

---

scientific community. Daubert, 509 U.S. at 593-597.

[6] See also, Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-142, 147-153 (1999) ("Daubert's general holding--setting forth the trial judge's general 'gatekeeping' obligation--applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge. the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.").

research has been subjected to peer review are the two principal ways the proponent of expert testimony can show that the evidence satisfies the first prong of Rule 702. **Where such evidence is unavailable, the proponent of expert scientific testimony may attempt to satisfy its burden through the testimony of its own experts. For such a showing to be sufficient, the experts must explain precisely how they went about reaching their conclusions and point to some objective source-- a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like--to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field.** Daubert II, 43 F. 3d at 1317-1319 (*Emphasis Added.*)(*Footnotes omitted.*).

As to the "relevance" requirement, the 9th Circuit stated:

**In elucidating the second requirement of Rule 702, *Daubert* stressed the importance of the "fit" between the testimony and an issue in the case: "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."** 509 U.S. at ----, 113 S.Ct. at 2796. Here, the pertinent inquiry is **causation**. In assessing whether the proffered expert testimony "will assist the trier of fact" in resolving this issue, we must look to the governing substantive standard….
Daubert II, 43 F. 3d at 1320 (*Emphasis Added.*) (*Footnote omitted.*).

The 9th Circuit determined that plaintiffs' expert witnesses did not comply with the "reliability" and "relevance" requirements elaborated by the Supreme Court. Daubert II, 43 F. 3d at 1319, 1322.

Under the applicable case law, Dr. Villanueva's expert testimony is also unreliable; it has numerous flaws and lacks any methodology. Dr. Villanueva's report does not discuss

"causality" and does not state, compare or contrast, in any way, how the denials of lateral transfers worsened plaintiff's medical condition.[7] Further, the report does not mention how other factors, such as her separation from her husband, due to her spouse's aggression and drinking habits, or the multiple accidents could have affected or contributed to her depressive condition. See, Peña-Crespo v. Puerto Rico, 408 F.3d at 13-14; Sierra Club, Lone Star Chapter v. Cedar Point Oil Company, Inc., 73 F. 3d 546, 569-571 (5th Cir. 1996) (Affirming district court's decision to strike defendant's expert witnesses because: "Don Harper's statement of opinions and reasons was a one-and-a-half page outline listing his 'points of testimony.' Carl Oppenheimer offered two one-paragraph descriptions of his opinions. Stanley Pier and John McGowan also provided only one-paragraph statements relating to their opinions. Finally, Joe Haney's statement included no substantive opinions, but only declared what subjects he intended to research and to discuss at trial."); Smith v. Union Pacific Railroad Co., 168 F.R.D. 626, 628-629 (N.D. Illinois 1996) (Barring defendant's expert witness testimony because the expert's report was "'sketchy'" and "'vague'"; that is, it did not provide "'a complete statement of all opinions to

---

[7] Dr. Villanueva's report is devoid of substantive sources upon which to base his analysis or conclusion. He merely states that he reviewed the State Insurance Fund files, Dr. Tasch's Fibromyalgia and Depression diagnosis, and had two meetings, on May 25 and 31, 2005, with plaintiff. Exhibit 31 of Docket 51, p. 4.

be expressed and the basis and reasons therefore'". Stating that the expert report could be viewed as a "bad joke".)(Quoting Advisory Committee's 1993 revision of Fed. R. Civ. P. 26 (a)(2)(B)).

In the instant case, plaintiff's expert witness, Dr. Villanueva, does not comply with the two (2) requirements of the <u>Daubert</u> test. Dr. Villanueva's analysis did not follow scientific methodology or analysis; therefore, his report is unreliable. As a result, the report has no relevance in assisting the Court in determining the cause of plaintiff's alleged damages and/or whether she has the disability alleged.

As previously discussed, Dr. Villanueva's report does not contain a valid opinion. It does not contain any analytical basis for rendering same. The report does not refer to the substantive sources upon which Dr. Villanueva based his analysis and conclusion. The lack of this information points to the fundamental deficiency in Dr. Villanueva's report. Given these flaws, his analysis cannot be qualified as "scientific".

His report simply concludes that plaintiff's depression is work-related, without more. Causation is not explained. Outside of rehashing plaintiff's allegations, the report does not state the specific work-related actions that, according to the report, provoked plaintiff's depression or how her ailment worsened due to her work.

Further, Dr. Villanueva's report does not even state the guide relied upon in order to diagnose plaintiff. Any other factors identified in plaintiff's history, that may have contributed to the depression assessed, simply remained untouched and summarily discarded. Dr. Villanueva just concluded plaintiff's work was the sole cause of her depression. See, page 6 of Exhibit 31 of Docket 51.

Additional indicia of the unreliability of Dr. Villanueva's expert report are also present. Dr. Villanueva interviewed plaintiff on two occasions during May of 2005 and prepared the report <u>three (3) months</u> later, in September 2005, without any further visits or follow-up interviews. Clearly, the above reveals the fallibility and unreliability of Dr. Villanueva's assessments and conclusions.

The fundamental flaws highlighted above render Dr. Villanueva's expert report undependable and irrelevant. The data provided in the report does not assist in understanding or determining the cause of plaintiff's alleged emotional damages or condition. See, <u>Koken</u> v. <u>Black & Veatch Const., Inc.</u>, 426 F.3d 39 (1st Cir. 2005) (Upholding a district court's exclusion of an expert's testimony were the engineering expert witness did not articulate a methodology for reaching his conclusions. <u>Daubert</u> requires a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and

of whether that reasoning or methodology properly can be applied to the facts in issue.); Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 597-598 (9th Cir. 1996) (Describing expert as a "professional plaintiff's witness", and excluding him because his research apparently was influenced by a "litigation-driven financial incentive" and satisfied no guarantee of reliability, since expert did not explain how he reached his conclusions and did not point to an objective source to demonstrate that his "..method and premises were generally accepted by or espoused by a recognized minority of teratologists".); Braun v. Lorillard Inc., 84 F.3d 230, 234-235 (7th Cir. 1996) (Affirming district court's exclusion of plaintiff's expert witness, based upon the expert's admission as to having no knowledge of the methodology that should have been employed for performing certain tests. Criticizing the practice of hiring experts to testify to propositions helpful to one side in a lawsuit, but which were not arrived at through the methods used when doing regular professional work.); Valentine v. Pioneer Chlor Alkali Co., Inc., 921 F.Supp. 666, 669-678 (D. Nev. 1996) (Excluding three of plaintiffs' experts because of the fundamental flaws in each of the experts' analysis, as a consequence of which they could not establish the required causal relationship between defendant's actions and plaintiffs' damages.); Whiting v. Boston Edison Co., 891 F.Supp. 12, 24-25 (D. Mass. 1995) (Excluding plaintiff's two

expert witnesses because said experts did not have sufficient qualifications and their opinions were "…grounded on speculation shaped by result-oriented biases. It fails all of the <u>Daubert</u> reliability factors."); <u>In re Hanford Nuclear Reservation Litigation</u>, 894 F. Supp. 1436, 1446-1449 (E.D. Wash. 1995) (Excluding plaintiffs' expert, and stating that one of the expert's inferences did not have any independent evidence to support it, and was developed simply for purposes of withstanding defendants' motion for summary judgment. Also stating that the expert's other inference was ambivalent in terms of establishing a causal relationship.).

In light of the above, Dr. Villanueva's report should be stricken from the record and excluded from the plaintiff's statement of facts and opposition to summary judgment (Docket 51 and 50, respectively).

WHEREFORE defendant respectfully requests that the Court strike Exhibit 1, 2, 3, and 31 of Plaintiff's Statement of Facts (Docket #51) as well as those references pertaining to these exhibits in plaintiff's opposition brief (Docket #50).

RESPECTFULLY SUBMITTED.

IT IS HEREBY CERTIFIED that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: mendozalo@yahoo.com.

In San Juan, Puerto Rico, this 24th day of May 2006.

O'NEILL & BORGES
American International Plaza
250 Muñoz Rivera Ave., Ste. 800
San Juan, Puerto Rico 00918-1813
TEL  (787) 764-8181
FAX  (787) 753-8944
E-M  pedro.delgado@oneillborges.com
      eileen.garcia@oneillborges.com

S/PEDRO A. DELGADO HERNÁNDEZ
PEDRO A. DELGADO HERNÁNDEZ
USDC-PR 202008

S/EILEEN GARCÍA WIRSHING
EILEEN GARCÍA WIRSHING
USDC-PR 219307
